WO

MDR

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Edward Lee Jones, Sr.,

Plaintiff,

v.

Baldinado, et al.,

Defendants.

No.   CV 20-01371-PHX-MTL (JZB)

**ORDER**

On July 9, 2020, Plaintiff Edward Lee Jones, Sr., who is confined in the Arizona State Prison Complex-Eyman in Florence, Arizona, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed In Forma Pauperis (Doc. 2). The Court will order Defendant Baldinado to answer Counts One and Two of the Complaint, order Defendant Ridnour to answer the excessive force claim in Count Three, order Defendant Leifson to answer Count Seven, and dismiss the remaining claims and Defendants without prejudice.

**I.     Application to Proceed In Forma Pauperis and Filing Fee**

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will not assess an initial partial filing fee. *Id.* The statutory filing fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C.

TERMPSREF

§ 1915(b)(2).  The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

## II.    Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent

standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**III.   Complaint**

In his seven-count Complaint, Plaintiff sues the following Defendants: Deputy Warden J. Kimble; Lieutenant Aims; Sergeants Ridnour and Serreto; Correctional Officers II Baldinado, Kyle, and T. Tyler; and Centurion employees John/Jane Doe and Leifson. Plaintiff sues Defendants Baldinado, Ridnour, Serreto, Aims, Doe, and Leifson in their individual and official capacities.  In his Request for Relief, Plaintiff seeks monetary damages and payment of his filing fees.

In **Count One** (Doc. 1 at 5-10),[1] Plaintiff alleges Defendant Baldinado, in violation of Plaintiff's Eighth Amendment rights, acted unprofessionally and unjustifiably when he maliciously and sadistically used unreasonable and excessive force against Plaintiff.  (*Id.* at 5.)  Specifically, Plaintiff contends that on July 23, 2019,[2] Defendant Baldinado was passing out inmate property and gave Plaintiff three "inmate property/contraband/disposition tracking forms" regarding eighteen of Plaintiff's compact discs.  (*Id.* at 7.)  Plaintiff claims he went back to his cell, obtained documentation indicating that he had previously been issued the compact discs, and attempted to show the documentation to Defendant Baldinado and request a supervisor, but Defendant Baldinado ignored him.  (*Id.* at 7-8.)  Plaintiff asserts he got the attention of a corrections officer, who gave Plaintiff permission to leave his pod and come talk to her.  (*Id.* at 8.)  Plaintiff contends Defendant Baldinado heard him talking to the corrections officer; said, "fuck this shit"; stopped passing out the property; placed the property cart in a room; and returned to where Plaintiff was talking to the corrections officer.  (*Id.*)  Plaintiff alleges Defendant Baldinado "attempted to start an argument with [Plaintiff] regarding what [Special Management

---

[1] Because Plaintiff has misnumbered some of his claims, the Court will include references to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

[2] Although Plaintiff alleges the incident took place on July 23, 2018, **and** on July 23, 2019, it is clear from the totality of his allegations that the event took place on July 23, 20**19**.

Unit 1 (SMU-1)] policy allowed and did not allow." (*Id*.)  Plaintiff claims he explained to Defendant Baldinado that SMU-1 did not have a special policy and that Plaintiff's compact discs had already been approved.  (*Id*. at 8.)  Plaintiff told Defendant Baldinado that "he recognize[d Defendant Baldinado was] attempt[ing] to distract [Plaintiff] from obtaining assistance" and continued to talk with the corrections officer.  (*Id*. at 8-9.)

Plaintiff alleges Defendant Baldinado left briefly and then "aggressively came back" to the area, placed his radio on the ground, approached Plaintiff and said, "this is my shit," and pushed Plaintiff.  (*Id*. at 9.)  Plaintiff claims he told Defendant Baldinado to keep his hands to himself, but Defendant Baldinado pushed Plaintiff a second time and, in an attempt to provoke Plaintiff, said, "See[,] you[']r[e] not gonna do shit; you[']r[e] all talk." (*Id*.)  Plaintiff asserts he again told Defendant Baldinado to keep his hands to himself, but Defendant Baldinado pushed Plaintiff a third time.  (*Id*.)  Plaintiff contends that, at this point, he "defended himself by pushing [Defendant Baldinado] back." (*Id*.) Plaintiff claims the correctional officer activated an Incident Command System (ICS) and reported a staff assault.  (*Id*.)  He contends Defendant Baldinado proceeded to wrestle Plaintiff to the ground and kept him there until other officers arrived and pulled Defendant Baldinado off of Plaintiff.  (*Id*.)

Plaintiff claims Defendant Baldinado's actions did not advance a legitimate penological interest and were done to harm Plaintiff and send him back to maximum custody.  (*Id*.)  Plaintiff alleges he suffered bruises to his shoulders and pain in his leg and face from being assaulted, wrestled to the ground, and kicked in the face while Defendant Baldinado's coworkers sat on Plaintiff's back and head.  (*Id*. at 5.)  Plaintiff also claims he suffered mental stress and psychological trauma that caused him to be placed on medication for resultant anxiety and sleep issues.  (*Id*.)

In **Count Two** (*id*. at 11-12), Plaintiff alleges Defendant Baldinado retaliated against him, in violation of Plaintiff's First Amendment rights, because Plaintiff sought a corrections officer's assistance to resolve his property issue and because he ignored Defendant Baldinado's attempt to prevent him from getting help from the corrections

officer.  (*Id*. at 11.)  Specifically, Plaintiff asserts Defendant Baldinado pushed him several times, wrestled him to the ground after he defended himself, and accused Plaintiff of assaulting him.  (*Id*.)  Plaintiff claims this would not have occurred if he had not sought the corrections officer's assistance regarding his property.  (*Id*.)  Plaintiff also asserts that Defendant Baldinado's actions did not advance a legitimate penological interest and were done to cause Plaintiff harm and send him back to maximum custody.  (*Id*. at 12.)

In **Count Three** (*id*. at 13-15), Plaintiff alleges he was subjected to excessive force and retaliation by Defendant Ridnour, in violation of Plaintiff's Eighth Amendment rights. (*Id*. at 13.)  Plaintiff asserts that after he defended himself from Defendant Baldinado, he was wrestled to the ground and then restrained by Defendant Baldinado's co-workers, who put their knees on Plaintiff's head and back.  (*Id*. at 13-14.)  Plaintiff contends he was non-resistant, handcuffed, and lying on his stomach on the ground when Defendant Ridnour and others walked into the wing.  (*Id*. at 14.)  He claims Defendant Ridnour initially walked past Plaintiff then doubled back, kicked Plaintiff in the face, and walked away.  (*Id*.)  Plaintiff asserts Defendant Ridnour's actions did not advance a legitimate penological objective, were not applied in a good faith effort to maintain or restore discipline, were done maliciously and sadistically to cause harm, and were unnecessary and retaliatory.  (*Id*.)

Plaintiff also claims that when other officials arrived, he was accused of assaulting Defendant Baldinado, which was a "falsehood" that Defendant Ridnour used to retaliate against Plaintiff and that SMU-1 administration used to cover up Defendant Baldinado's conduct and to reclassify Plaintiff to maximum custody.  (*Id*.)  In addition, Plaintiff asserts that in June 2020, Defendant Ridnour indirectly threatened Plaintiff, "talk[ed] down" to him, discussed the prior incident, and, when Plaintiff indicated he was going to sue Defendant Ridnour for kicking him, Defendant Ridnour told him, "this won[']t be my first time being sued." (*Id*. at 15.)

In **Count Four** (*id*. at 16-18), Plaintiff alleges Defendant Serreto subjected him to deliberate indifference and retaliation, in violation of his First, Eighth, and Fourteenth

Amendment rights.  (*Id*. at 16.)  He asserts that between June 5 and July 19, 2019, he continuously sought Defendant Serreto's assistance in obtaining his property, but he received "no meaningful assistance" from her, despite her claims that she would resolve the issue.  (*Id*.)  Plaintiff also alleges that he subsequently attempted to address the issue with Defendant Serreto, but she told him that she was "staying out of it" and he needed to resolve the issue "with property."  (*Id*. at 17.)  Finally, Plaintiff contends that after the July 23, 2019 incident, Defendant Serreto walked into a room in the medical department; asked Plaintiff, "in an aggressive tone[,] 'Are you happy now?"; and told Plaintiff that she did not help him with his property because he was "a piece of shit."  (*Id*. at 18.)  Plaintiff contends Defendant Serreto's acts and omissions did not advance a legitimate penological justification and were done to retaliate against Plaintiff for filing grievances and lawsuits and seeking the return of his property.  He also contends Defendant Serreto retaliated by denying him equal protection and discriminated against Plaintiff because he wrote grievances regarding her subordinates and co-workers and because Plaintiff was known to file lawsuits against them.  (*Id*.)

In **Count Five** (*id*. at 19-21), Plaintiff alleges Defendant Aims violated the prohibition against cruel and unusual punishment and denied Plaintiff due process by issuing a "false" disciplinary infraction accusing Plaintiff of punching Defendant Baldinado in the face.  (*Id*. at 19.)  He claims Defendant Aims issued the disciplinary infraction to retaliate against Plaintiff for acting in self-defense and causing an ICS to be activated and to cover-up Defendant Baldinado's excessive force.  (*Id*. at 19-20.)  Plaintiff contends Defendant Aims wrote the disciplinary infraction, despite his failure to witness the incident, because he knew that his subordinates would not second-guess the disciplinary infraction and Plaintiff would be immediately placed in segregated confinement and then placed in maximum custody after the infraction was upheld.  (*Id*. at 20.)

Plaintiff alleges Defendant Aims subjected him to atypical and significant hardships, without due process, because he was transferred from a close-custody unit, where he was allowed to spend at least six hours per day out of his cell, shower daily,

possess almost all of his property, work, and recreate three to four times a week, to segregated confinement, where he was locked down 24-hours per day with little to no human contact.  (*Id*. at 20-21.)  Plaintiff contends he was denied due process in the grievance process because all Arizona Department of Corrections officials "work[ed] together in pushing [Defendant Aims's] version of the facts although [they were] false" and did "not allow[ Plaintiff's] to go forward" for three months.  (*Id*. at 21.)  Plaintiff also claims he was denied due process on the disciplinary infraction because he did not receive written notice until almost a month after the alleged assault occurred.  (*Id*.)  Plaintiff contends he is currently in maximum custody, where he is locked down 24 hours a day and has no out-of-cell activity except for showers.  (*Id*.)

Plaintiff claims his Eighth Amendment rights were violated because he was "never given segregation time[,] but [was] made to spend approximately 6 or so months in super-max."  (*Id*.)  He also claims Defendant Aims's acts or omissions did not advance a legitimate penological interest and were done to conceal Defendant Baldinado's misconduct and to "get [Plaintiff] slammed down in Detention/Maximum Custody under false pretenses."  (*Id*.)

In **Count Six** (*id*. at 22-23),[3] Plaintiff alleges Defendant Doe subjected him to deliberate indifference regarding his medical care, in violation of the Eighth Amendment.  (*Id*. at 22.)  He claims that after the July 23, 2019 incident, he was denied medical care or treatment by Defendant Doe, who "never showed up," either before or after his transfer to another unit.  (*Id*.)

Plaintiff claims he submitted a July 25, 2019 health needs request informing the medical staff that he had been attacked and kicked in the face; he had pain in shoulder, leg, and face; his anxiety was high; he was having trouble sleeping; and he was constantly on alert.  (*Id*.)  He contends he was placed on the nurses' line on July 29, 2019.  (*Id*.)  Plaintiff alleges that by August 8, 2019, he had not been called to the medical department, so he submitted another health needs request, informing the medical department that he was still

---

[3] Plaintiff mistakenly identifies this claim as "Count 8."

having anxiety.  (*Id*.)  He claims he did not receive a response, but he was finally seen by the mental health department on August 21, 2019, and was prescribed hydroxyzine and Effexor.  (*Id*.)  Plaintiff asserts he filed an August 23, 2019 informal inmate complaint alleging he had been denied medical care, but he received no response, so he submitted a September 17, 2020 inmate grievance.  (*Id*. at 22-23.)  Plaintiff alleges he was finally seen by the medical department on September 18, 2019, by which time his injuries had healed.  (*Id*.)  At that appointment, he was taken off hydroxyzine and placed on mirtazapine to help with his sleep and anxiety issues.  (*Id*.)

In **Count Seven** (*id*. at 24-26),[4] Plaintiff alleges Defendant Leifson denied him medical care, in violation of his Eighth Amendment rights, by "wrongful[ly]" taking him off his medications.  (*Id*. at 24.)  Plaintiff asserts he had been prescribed clonidine and Celexa in December 2019.  (*Id*.)  During a follow-up appointment with Defendant Leifson on January 27, 2020, Plaintiff explained that the Celexa was making him sluggish and he no longer needed the antidepressant because he no longer had depression issues and that he only needed help with mood swings, anxiety, and sleep issues.  (*Id*.)  He explained that the clonidine was working and that he was fine with continuing it.  (*Id*.)  Plaintiff asserts that "[o]ut of the blue," Defendant Leifson asked if Plaintiff suffered from erectile disfunction.  (*Id*.)  Plaintiff claims he felt this was disrespectful because it had nothing to do with his medical request, and Defendant Leifson, realizing Plaintiff was upset, explained that he had asked the question because the medication caused erectile disfunction.  (*Id*. at 24-25.)  Plaintiff alleges he told Defendant Leifson that he would be submitting an informal complaint against him and requested to be seen by another medical provider.  (*Id*. at 25.)

Plaintiff asserts that after he filed an informal complaint against Defendant Leifson, Defendant Leifson retaliated against him by discontinuing both medications and documenting in Plaintiff's mental health file that Plaintiff had requested to be removed from both medications.  (*Id*.)  Plaintiff claims that because of Defendant Leifson's

---

[4] Plaintiff mistakenly refers to this count as "Count IV."

retaliatory actions, which did not further any penological interests, he has been denied medical/mental health treatment since January 27, 2020.  (*Id*. at 26.)  Plaintiff alleges he is having constant anxiety attacks, he is losing sleep, his mood is unbalanced, and he has mental stress.  (*Id*. at 24, 26.)

**IV.   Discussion of Complaint**

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action.  *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.  *Id*.

**A.   Defendants Kyle, Kimble, and Tyler**

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).  There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

Plaintiff has not alleged that Defendants Kyle, Kimble, and Tyler personally participated in a deprivation of Plaintiff's constitutional rights, were aware of a deprivation and failed to act, or formed policies that resulted in Plaintiff's injuries.  Plaintiff has made no allegation in his Complaint against these Defendants.  Thus, the Court will dismiss without prejudice Defendants Kyle, Kimble, and Tyler.

. . . .

. . . .

**B.    Official Capacity Claims**

A suit against a defendant in his or her *official* capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  That is, the real party in interest is not the named defendant, but the entity that employs the defendant.  *Id.*

**1.    Defendants Baldinado, Ridnour, Serreto, and Aims**

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).  Plaintiff cannot maintain a lawsuit for damages against Defendants Baldinado, Ridnour, Serreto, and Aims in their official capacities.  *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officials sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."); *see also Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) ("[A] state is not a 'person' for purposes of section 1983. Likewise[,] 'arms of the State' such as the Arizona Department of Corrections are not 'persons' under section 1983.") (citation omitted).  Thus, the Court will dismiss Plaintiff's official capacity claims against Defendants Baldinado, Ridnour, Serreto, and Aims.

**2.    Defendants Doe and Leifson**

For an individual to be liable in his official capacity, a plaintiff must allege that the entity's policy or custom was a moving force behind the alleged constitutional violation. *Kentucky v. Graham*, 473 U.S. at 166.  A plaintiff must allege, as a matter of law, that the entity's policy or custom caused him to suffer constitutional injury.  *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006).  Plaintiff does not allege that any of his injuries were the result of a specific Centurion policy or custom.  Thus, the Court will dismiss Plaintiff's official capacity claims against Defendants Doe and Leifson.

. . . .

. . . .

**C.      Counts One and Two – Defendant Baldinado**

Liberally construed, Plaintiff has stated excessive force (Count One) and retaliation (Count Two) claims against Defendant Baldinado.  Thus, the Court will require Defendant Baldinado to answer Counts One and Two.

**D.      Count Three – Defendant Ridnour**

**1.      Excessive Force**

Liberally construed, Plaintiff has stated an excessive force claim against Defendant Ridnour in Count Three, and the Court will require Defendant Ridnour to answer this portion of Count Three.

**2.      Retaliation**

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest").   The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

Plaintiff's allegations do not support a conclusion that Defendant Ridnour's conduct—kicking Plaintiff, accusing Plaintiff of assaulting Defendant Baldinado, and making comments in June 2020—was retaliation for Plaintiff's exercise of his constitutional rights.  Thus, the Court will dismiss without prejudice the retaliation claim in Count Three.

**E.      Count Four – Defendant Serreto**

**1.      Deliberate Indifference**

To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must meet a two-part test.  "First, the alleged constitutional deprivation must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted).  Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety."  *Id.* (internal quotations omitted).  Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.  *Id.* at 835.  In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference."  *Id.* at 837 (emphasis added).

Defendant Serreto's failure to help Plaintiff obtain his compact discs does not rise to the level of deliberate indifference to a substantial risk of serious harm.  Thus, the Court will dismiss Plaintiff's deliberate indifference claim against Defendant Serreto.

**2.      Retaliation**

Although Plaintiff alleges Defendant Serreto retaliated against him for filing grievances and lawsuits and seeking the return of his property, he alleges no facts in support of this conclusion.   Thus, the Court will dismiss Plaintiff's retaliation claim against Defendant Serreto.

**3.      Equal Protection**

The Equal Protection Clause requires that persons who are similarly situated be treated alike.  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), or that similarly situated

individuals were intentionally treated differently without a rational basis for the difference in treatment, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

Plaintiff does not allege that he is a member of a protected class or that he was treated differently than other similarly situated individuals without a rational basis for treating him differently. Thus, the Court will dismiss without prejudice Plaintiff's equal protection claim against Defendant Serreto.

### F.    Count Five – Defendant Aims

#### 1.    Due Process

An inmate "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *see also Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (finding inmate's claims based upon falsity of charges brought by a prison counselor did not state a constitutional claim).

Although an inmate has "the right not to be deprived a protected liberty interest without due process of law," *Freeman*, 808 F.2d at 951, in analyzing a due process claim, the Court must first decide whether Plaintiff was entitled to any process, and if so, whether he was denied any constitutionally required procedural safeguard. Liberty interests that entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).

Even if Plaintiff was entitled to the procedural protections afforded by the Due Process Clause, Plaintiff has failed to allege any facts to support a conclusion that Defendant Aims was involved in the deprivation of due process, either in the placement of Plaintiff in segregated confinement after being charged with the disciplinary infraction, the grievance process, or the disciplinary hearing.

. . . .

Moreover, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Procedural due process safeguards in a prison disciplinary hearing require that the defendant receive: (1) written notice of the charges, no less than twenty-four hours *prior to the hearing*; (2) a written statement by the fact-finder as to the evidence relied on and reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the defendant to do so.  *Id.* at 565-66. Plaintiff does not allege he was denied any of these procedural protections.

Thus, the Court will dismiss without prejudice Plaintiff's due process claim against Defendant Aims.

### 2.    Eighth Amendment

Plaintiff's Eighth Amendment allegations relate to the conditions in supermax, but he does not allege anything to suggest Defendant Aims was responsible for these conditions or disregarded any complaints Plaintiff made about them.  Thus, the Court will dismiss without prejudice Plaintiff's Eighth Amendment claim against Defendant Aims.

### G.    Count Six – Defendant Doe

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment.  To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  Deliberate

indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

To the extent Plaintiff is alleging Defendant Doe violated his Eighth Amendment rights because he never showed up after Plaintiff was injured, Plaintiff's allegations are too vague and conclusory to state a claim. Plaintiff does not identify how Defendant Doe even knew Plaintiff needed medical treatment. It appears Plaintiff is making allegations against a group of individuals, without any factual specificity as to what any particular individual did or failed to do. This is insufficient. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (upholding dismissal of *Bivens* complaint that referred to all defendants "generally and categorically" because the plaintiff had failed to "'allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'" (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))); *Robbins v. Oklahoma*,

519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."). Thus, the Court will dismiss without prejudice Count Six and Defendant Doe.

**H.  Count Seven**

Liberally construed, Plaintiff has stated claims against Defendant Leifson regarding retaliation and the denial of medical care. The Court will require Defendant Leifson to answer Count Seven.

**V.  Warnings**

**A.  Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

**B.  Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**C.  Copies**

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4. Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by including, with every document he files, a certificate of service stating that this case is

1  subject to General Order 14-17 and indicating the date the document was delivered to
2  prison officials for filing with the Court.

3      **If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he
4  will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a
5  copy of every document that he files, and include a certificate stating that a copy of the
6  filing was served; and (b) submit an additional copy of every filing for use by the Court.
7  *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4.  Failure to comply may result in the filing
8  being stricken without further notice to Plaintiff.

9      **D.   Possible Dismissal**

10     If Plaintiff fails to timely comply with every provision of this Order, including these
11 warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*,
12 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure
13 to comply with any order of the Court).

14 **IT IS ORDERED:**

15     (1)    Plaintiff's Application to Proceed In Forma Pauperis (Doc. 2) is **granted**.

16     (2)    As required by the accompanying Order to the appropriate government
17 agency, Plaintiff must pay the $350.00 filing fee and is not assessed an initial partial filing
18 fee.

19     (3)    Counts Four, Five, and Six are **dismissed** without prejudice.

20     (4)    Defendants Serreto, Aims, Kyle, Doe, Kimble, and Tyler are **dismissed**
21 without prejudice.

22     (5)    The following Defendants must answer the following claims in their
23 individual capacities only: Defendant Baldinado must answer Counts One and Two;
24 Defendant Ridnour must answer the excessive force claim in Count Three; and Defendant
25 Leifson must answer Count Seven.

26     (6)    The Clerk of Court must send Plaintiff this Order, and a copy of the
27 Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request
28 for Waiver of Service of Summons form for Defendants Baldinado, Ridnour, and Leifson.

**TERMPSREF**

(7)     Plaintiff must complete[5] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(8)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(9)     The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(10)    The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.

(11)    A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(12)    The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)     personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

---

[5] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works.  Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

1

     (b)    within 10 days after personal service is effected, file the return of

2 service for Defendant, along with evidence of the attempt to secure a waiver of

3 service of the summons and of the costs subsequently incurred in effecting service

4 upon Defendant.  The costs of service must be enumerated on the return of service

5 form (USM-285) and must include the costs incurred by the Marshal for

6 photocopying additional copies of the Summons, Complaint, or this Order and for

7 preparing new process receipt and return forms (USM-285), if required.  Costs of

8 service will be taxed against the personally served Defendant pursuant to Rule

9 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the

10 Court.

11     (13)    Defendants Baldinado, Ridnour, and Leifson must answer the relevant

12 portions of the Complaint or otherwise respond by appropriate motion within the time

13 provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

14     (14)    Any answer or response must state the specific Defendant by name on whose

15 behalf it is filed.  The Court may strike any answer, response, or other motion or paper that

16 does not identify the specific Defendant by name on whose behalf it is filed.

17     (15)    This matter is referred to Magistrate Judge John Z. Boyle pursuant to Rules

18 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as

19 authorized under 28 U.S.C. § 636(b)(1).

20     Dated this 16th day of September, 2020.

21

22

23                     *Michael T. Liburdi*

24                       Michael T. Liburdi
                      United States District Judge

25

26

27

28