WO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Edward Lee Jones, Sr.,

Plaintiff,

v.

Unknown Baldinado, et al.,

Defendants.

No. CV-20-01371-PHX-MTL (JZB)

**ORDER**

Pending before the Court is Plaintiff's Amended Motion to Amend Complaint. (Doc. 41.) The Court will grant the Motion and screen Plaintiff's proposed First Amended Complaint (lodged at doc. 42-1).

**I. Background.**

On July 9, 2020, Plaintiff initiated this action by filing a prisoner civil rights complaint (Complaint). (Doc. 1.) On September 16, 2020, the Court screened Plaintiff's Complaint and directed Defendants Baldinado, Ridnour, and Leifson to answer the claims against them therein. (Doc. 6.) On December 15, 2020, Defendants answered the Complaint. (Docs. 11, 13.)

On January 12, 2021, the Court issued a scheduling order setting the following deadlines: deadline to amend pleadings or complaint – April 12, 2021; fact discovery deadline – June 11, 2021; and dispositive motion deadline – September 9, 2021. (Doc. 14.) The Court warned the parties that "the deadlines are firm" and "the Court will enforce the

deadlines set forth in this Order; the parties should plan their litigation activities accordingly." (*Id.* at 3.)

**II. Motion and Amended Motion to Amend Complaint.**

On April 15, 2021, Plaintiff filed his Motion to Amend his Complaint. (Doc. 32.) Therein, Plaintiff acknowledges that his Motion is untimely. (*Id.* at 2 ("On January 12, 2021, the Court issued a Scheduling Order, therein setting the deadline for joining parties and amending pleadings out until April 12, 2021, which has recently passed 24 hours ago.").) Plaintiff informs the Court that he "did not complete his draft of his First Amended Complaint until April 10, 2021, and was unable to file it on April 12, 2021, because the librarian only arrives on Wednesdays, which is April 14, 2021" and "[t]his is the only day Plaintiff has access to the Unit Library/E-Filing system." (*Id.* at 2-3.) Plaintiff also asks the Court to "allow him to exceed the page limit by 9 pages." (*Id.* at 3.)

On April 21, 2021, Defendants filed a Response to Plaintiff's Motion to Amend. (Docs. 36, 37.) Therein, Defendants contend that Plaintiff's Motion should be denied as untimely and for failure to comply with LRCiv 15.1. (Doc. 36.)

On May 13, 2021, Plaintiff filed an Amended Motion to Amend. (Doc. 41.) Plaintiff concurrently filed a new proposed First Amended Complaint (lodged at doc. 42), that he asserts is compliant with LRCiv 15.1. (Doc. 41 at 1.) Additionally, Plaintiff asserts that he did intend to seek both an extension of time and leave to exceed the page limit in his first Motion to Amend (doc. 32). (Doc. 41 at 3.)

The Court will construe Plaintiff's explanation of his delay as a request for the Court to accept his untimely filing, and the Court will grant Plaintiff's request. Plaintiff missed the deadline by mere days, and to review his filing would result in no prejudice to Defendants. The Court will also grant Plaintiff's Motion to Exceed the Page limit (doc. 41) and will screen Plaintiff's proposed First Amended Complaint (FAC) pursuant to 28 U.S.C. § 1915A(a).

**III. Screening of Prisoner Complaint.**

The Court is required to screen complaints brought by prisoners seeking relief

against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

**IV. First Amended Complaint.**

In his proposed FAC, Plaintiff alleges eight total "Counts" against the following Defendants in their individual and official capacities: Jacey Baldonado, Correctional Officer (CO) II; Sergent Kaleb Ridenour, CO; G. De La Torre #10863, COII; Lieutenant William Ames, CO; Barbara Gallant, RN; Brett Leifson, Medical Provider; J. Olgoin, COII. (Doc. 42-1.)[1] Plaintiff seeks monetary damages, payment of his filing fees and

[1] The Court notes that Plaintiff's first proposed FAC (lodged at doc. 42), was poorly scanned and largely illegible. (*See* Doc. 42.) On May 17, 2021, the Clerk's office secured and attached a corrected proposed FAC, which is legible. (*See* Doc. 42-1.) The Court will cite to this attachment throughout this Order, and ultimately direct the Clerk to file the

attorney's fees, and injunctive relief in the form of having "cameras placed in clusters of the SMU-1 Unit." (*Id.* at 30.)

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id*.

**A. Counts One, Two, Three, and Seven.**

Plaintiff's allegations in Counts One, Two, Three, and Seven of his proposed FAC are virtually identical to those counts in his original Complaint. (*Compare* Doc. 1 at 5-10, 11-12, 13-15, and 24-26 *with* Doc. 42-1 at 5-11, 12-13, 14-16, and 26-27.) Accordingly, the Court will adopt its relevant summaries and analysis from its September 16, 2020 Screening Order, and direct Defendants Baldinado, Ridnour, and Leifson to answer the relevant claims against them therein. (*See* Doc. 6 at 3-5, 11, 16-17.)

**B. Count Four.**

In **Count Four** (doc. 42-1 at 17-19), Plaintiff alleges Defendant De La Torre engaged in deliberate indifference to the excessive force committed by Defendant Baldinado in violation of Plaintiff's Eighth Amendment rights. (*Id.* at 17.)

Specifically, he asserts that on July 23, 2019, Defendant G. De La Torre "was working 2 Baker-Wing Bubble and had given the Plaintiff on two separate occasions that morning permission to leave his pod and address an issue with her at the bubbles trap." (*Id.*) During the second conversation, Defendant De La Torre observed Defendant Baldinado approach Plaintiff twice; "the first time in an attempt to initiate an argument with Plaintiff / the second time to initiate a physical altercation with the Plaintiff." (*Id.*) Plaintiff alleges that Defendant De La Torre "demonstrated deliberate indifference and became an accessary to the use of excessive force by an officer . . . when she chose not to activate the incident command system or report her co-workers illegal conduct after

---

attachment as Plaintiff's First Amended Complaint.

Defendant Baldinado assaulted the Plaintiff[.]" (*Id.*)

To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must meet a two-part test. "First, the alleged constitutional deprivation must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted). Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

Liberally construing Plaintiff's claims, Plaintiff has stated a deliberate indifference claim against Defendant De La Torre in Count Four.

**C. Count Five.**

In **Count Five** (*id.* at 20-22), Plaintiff alleges Defendant William Aims violated the prohibition against cruel and unusual punishment and denied Plaintiff due process "by issuing [Plaintiff] a false disciplinary infraction[.]" (*Id.* at 20.) Plaintiff claims that Defendant Aims issued the disciplinary infraction in retaliation against Plaintiff for acting in self-defense and to cover-up Defendant Baldinado's excessive force, despite Defendant Aims not being present at the time of the incident. (*Id.* at 20-21.) Plaintiff contends Defendant Aims wrote the disciplinary infraction, despite his failure to witness the incident, because he knew that his subordinates would not second-guess the disciplinary infraction and Plaintiff would be immediately placed in segregated confinement and then placed in maximum custody after the infraction was upheld. (*Id*. at 21.)

Plaintiff alleges Defendant Aims subjected him to "atypical and significant hardships in retaliation to the ordinary incidents of prison life, with no level of due process,

because" he was transferred from a close-custody unit – where he was allowed to "spend at least 6 hours out of my cell daily, had ability to take showers every day, access to cleaning materials to sanitize my cell, . . . possess almost just about all my property, obtain a job to support myself, and to go to recreation 3-4 times a week" – to segregated confinement, where he was locked down 24-hours per day with little to no human contact. (*Id*. at 21-22.)

Plaintiff contends he was denied due process in the grievance process because he "did not receive written notice of the false disciplinary infraction until August 22, 2019, despite the incident occurring a month prior" and he "was denied a hearing in seven days [illegible] violation of D.O.#803.06[.]" (*Id.* at 22.) Plaintiff contends Defendant Aims's "acts and omissions did not advance a legitimate penological interest or justification" and were "done to conceal criminal conduct of his co-worker [Defendant Baldinado] and cause [Plaintiff] injury." (*Id.*)

**1. Due Process.**

An inmate "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *see also Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (finding inmate's claims based upon falsity of charges brought by a prison counselor did not state a constitutional claim).

Although an inmate has "the right not to be deprived a protected liberty interest without due process of law," *Freeman*, 808 F.2d at 951, in analyzing a due process claim, the Court must first decide whether Plaintiff was entitled to any process, and if so, whether he was denied any constitutionally required procedural safeguard. Liberty interests that entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).

Even if Plaintiff was entitled to the procedural protections afforded by the Due Process Clause, Plaintiff has failed to allege any facts to support a conclusion that Defendant Aims was involved in the deprivation of due process, either in the placement of Plaintiff in segregated confinement after being charged with the disciplinary infraction, the grievance process, or the disciplinary hearing. To be sure, Plaintiff alleges that his confinement placement was "changed because of Defendant Aims' deliberate indifference and taking the extra step to make sure the Disciplinary infraction would be upheld by drafting it himself" (doc. 42-1 at 22); but such an allegation falls short of alleging that it was Defendant Aims decision to move Plaintiff's housing.

Moreover, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Procedural due process safeguards in a prison disciplinary hearing require that the defendant receive: (1) written notice of the charges, no less than twenty-four hours *prior to the hearing*; (2) a written statement by the fact-finder as to the evidence relied on and reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the defendant to do so. *Id.* at 565-66. Plaintiff does not allege he was denied any of these procedural protections.

Thus, the Court will dismiss without prejudice Plaintiff's due process claim against Defendant Aims.

**2. Eighth Amendment.**

To the extent Plaintiff asserts Eighth Amendment allegations related to the conditions in supermax, Plaintiff fails allege any facts suggesting Defendant Aims was responsible for these conditions or disregarded Plaintiff's complaints about them. Accordingly, the Court will dismiss without prejudice Plaintiff's Eighth Amendment claim against Defendant Aims.

**D. Count Six.**

In **Count Six** (*id*. at 23-25), Plaintiff alleges Defendant Barbara Gallant subjected

him to deliberate indifference[2] regarding his medical care, in violation of the Eighth Amendment. (*Id.* at 23.)

**1. Facts.**

Specifically, Plaintiff claims:

> On July 23, 2019, Defendant Gallant aided the ASPC-Eyman-SMU Administration in stagging a false claim of staff assault against me by falsifying my medical records when she asserted that I had refused medical treatment at 10:40 am (16 minutes before a I.C.S. or event actually transpired. Conversely, a delayed I.C.S. was activated at 10:56 am following me being attacked having to defend myself thereafter, wrestled to the ground knees placed in my back and on my head before I was kicked in the face. Def. Gallant's actions/inactions violated DO # 1101 and 120 – Inmate access.

(*Id.*) Plaintiff asserts that he "would have never denied or refused treatment." (*Id.*) "I was denied medical treatment by the Defendant, which the evidence demonstrates was pre-meditated, thus fraudulent." (*Id.*)

> When I was taken to medical at approximately 11:00 pm, no medical personnel was present to even treat me and never showed up, but to further the cover up of the initial denial of medical care, ADCRR official(s) not only signed as a witness to the asserted falsehood, that I refused medical treatment at 10:40am, ASPC-Eyman-SMU Officials (Sgt. Serrato Reying) convinced Nurse Practitioner Kendra Avant-Ortiz to also falsify documentation asserting I refused medical treatment.

(*Id.* at 23-24.)

Plaintiff further asserts that, on July 25, 2019, he submitted a health needs request informing the medical staff that he had pain in shoulder, leg, and face; his anxiety was high; he was having trouble sleeping; and he was constantly on alert. (*Id.* at 24.) He contends he was placed on the nurses' line on July 29, 2019. (*Id.*) Plaintiff alleges that by August 8, 2019, he had not been called to the medical department, so he submitted another health needs request, informing the medical department that he was still having anxiety. (*Id.*) He claims he did not receive a response, but he was finally seen by the mental health

---

[2] The Court notes that Plaintiff labels his claim in Count Six as alleging "mal-practice-deliberate-indifference." (Doc. 42-1 at 23.) However, a claim for medical malpractice is not cognizable under § 1983. *See Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). Accordingly, the Court will liberally construe Plaintiff's claim alleging deliberate indifference regarding his medical care.

department on August 21, 2019, and was prescribed hydroxyzine and Effexor. (*Id.*)

Plaintiff asserts he filed an August 23, 2019 informal inmate complaint alleging he had been denied medical care, but he received no response, so he submitted a September 17, 2020 inmate grievance. (*Id.* at 25.) Plaintiff alleges he was finally seen by the medical department on September 18, 2019, by which time his injuries had healed. (*Id.*) At that appointment, he was taken off hydroxyzine and placed on mirtazapine to help with his sleep and anxiety issues. (*Id.*)

**2. Deliberate Indifference.**

Plaintiff alleges that the "acts and omissions of Defendant Barbara Gallant were deliberately done to aid the ADCRR in covering up the assaultive conduct of the SMU officials." (*Id.*) "Her conduct . . . is considered mal-practice[3]," and "such acts did not advance a legitimate or penological interest and resulted in the infliction of unnecessary pain." (*Id.*)

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies,

---

[3] *See supra* n.2.

delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton*, 622 F.2d at 460 (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Liberally construed, Plaintiff's allegations that Defendant Gallant engaged in a conspiracy and cover up to falsify medical documentation to prevent Plaintiff from receiving medical care are sufficient to state a claim for deliberate indifference in violation of the Eighth Amendment. Defendant Gallant must answer Plaintiff's claims against her in Count Six of the FAC.

**E. Count Eight.**

In **Count Eight**, Plaintiff alleges Defendant J. Olguin subjected him to deliberate indifference in violation of Plaintiff's Eighth Amendment right to medical care. (*Id.* at 29.) Specifically, Plaintiff alleges that on July 23, 2019, Defendant Olguin aided "the ASPC-Eyman-SMU-1 Administration . . . in stagging [sic] a false-claim of staff assault against me by falsely documenting that I refused medical treatment at 10:40 am, in order to cover up the fact that ASPC-Eyman-SMU-1 Official and medical staff intentionally denied me medical care." (*Id.*) Plaintiff further alleges that "his actions not only deprived me of medical care, they were [illegible] fraudulently done because at 10:39 am I was in 2 Baker-

Cluster pod 2, and no I.C.S. was activated alerting him until 10:56am, when I arrived to medical it was count time and he was in medical." (*Id.*)

Liberally construed, Plaintiff has stated a claim for deliberate indifference of a serious medical need in violation of the Eighth Amendment against Defendant Olguin.

**V. Conclusion.**

The Court will grant Plaintiff's Motion to Amend. (Doc. 41.) After screening, the Court will order Defendants Baldinado, Ridnour, Leifson, De La Torre, Gallant, and Olguin to answer the claims against them in Plaintiff's FAC, as described in this Order. The Court will dismiss Defendant Aims and Count Five of Plaintiff's FAC.

Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion to Amend (doc. 41) is **granted**. The Clerk is directed to file Plaintiff's First Amended Complaint (lodged at doc. 42-1).

2. Defendants Baldinado, Ridnour, Leifson, De La Torre, Gallant, and Olguin to answer the claims against them in Plaintiff's FAC, as described in this Order.

3. Plaintiff's claims in Count Five are dismissed for failure to state a claim. Additionally, Defendant Aims dismissed from this action.

4. The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (doc. 42-1), this Order, and both summons and request for waiver forms for Defendants De La Torre, Gallant, and Olguin.

5. Plaintiff must complete[4] and return the service packets to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

6. If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Fourth Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order,

[4] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

whichever is later, the action may be dismissed. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

7. The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

8. The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

(a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Fourth Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

9. **If Defendant agrees to waive service of the Summons and Fourth Amended Complaint, he must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

///

///

10. Defendants must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

Dated this 14th day of June, 2021.

Michael T. Liburdi
United States District Judge